AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America | |
| v. | Case No. 2:23-mj-00376-DUTY |
| DANIEL CALDERON GARCIA, | |
| Defendant | |

FILED
CLERK, U.S. DISTRICT COURT
01/26/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___TRB___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of November 21, 2022, in the county of Ventura in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) | Bank Robbery |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Geoffrey S. Gilliland, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 01/26/2023

*Judge's signature*

City and state: Santa Barbara, California

Hon. Louise A. LaMothe, U.S. Magistrate Judge
*Printed name and title*

AUSA: Jena MacCabe x5046

**AFFIDAVIT**

I, Geoffrey S. Gilliland, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against DANIEL CALDERON GARCIA ("GARCIA") for a violation of 18 U.S.C. § 2113(a): Bank Robbery.

2. This affidavit is also made in support of an application for a warrant to search the following digital device (the "SUBJECT DEVICE") that is currently in the custody of the Oxnard Police Department in Oxnard, California, as described more fully in Attachment A-1: a silver Apple iPhone in a clear protective hard case with an unknown serial number, which was seized from GARCIA's person on November 21, 2022.

3. This affidavit is also made in support of an application for a warrant to search the following vehicle (the "SUBJECT VEHICLE") that is currently in the custody of the Oxnard Police Department in Oxnard, California, as described more fully in Attachment A-2: a 2004 gray Cadillac CTS bearing California license plate 6KXN515 and vehicle identification number 1G6DM577640141623, which is registered to GARCIA and was impounded on November 21, 2022.

4. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 371 (conspiracy to commit bank robbery), 18 U.S.C. § 2113(a) (bank robbery), 18 U.S.C § 924(c) (use of a firearm in furtherance of a crime of violence), and 18 U.S.C. § 922(g)(1)

(felon in possession of a firearm) (the "Subject Offenses"), as described more fully in Attachment B.  Attachments A-1, A-2, and B are incorporated herein by reference.

5.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

6.   I am a special agent with the Federal Bureau of Investigation (the "FBI") and have been so employed for the past 17 years.  I am currently assigned to FBI Ventura County Resident Agency.  My responsibilities with the FBI include bank robbery investigations in the Central District of California.  I work in conjunction with investigators from the Oxnard Police Department and the Ventura County Sheriff's Department to investigate bank robberies.

7.   Through the bank robbery and commercial/retail robbery investigations in which I have participated, I have used a variety of investigative techniques, including witness interviews, speaking with law enforcement agents and officers, reviewing surveillance images and cellular telephone data and

reviewing physical evidence.  As a result of this experience and my conversations with other law enforcement personnel, to include FBI special agents and local law enforcement detectives with experienced in commercial robbery investigations, I am familiar with the methods used by individuals to commit robberies as well as effective investigative methods to solve them.

### III.  SUMMARY OF PROBABLE CAUSE

8.   On November 21, 2022, at approximately 10:00 a.m., GARCIA robbed a Wells Fargo Bank branch located at 1700 E. Gonzalez Road, Oxnard, California 93063 by pushing deposit envelopes to a teller and a note stating that this is an armed robbery and to give him all the money in $100 bills.  GARCIA took a total of approximately $9,000 in denominations of $100 from Wells Fargo Bank.

9.   After the robbery, GARCIA took off on a bicycle, and a few minutes later, arrived at the Walmart Supercenter located at 2001 N. Rose Ave., Oxnard, California 93036, across the street from the bank.  There, he changed his clothes and stole some items.

10.  At approximately 7:00 p.m. that night, the Oxnard Police Department arrested GARCIA for violating a protective order that his mother had against him.  When police arrested him, GARCIA had $759 and the SUBJECT DEVICE on his person, which police seized.  Nearby, police impounded the SUBJECT VEHICLE, which was registered to GARCIA and parked illegally.

11. Law enforcement identified GARCIA as the bank robber using a six-pack identification by three eyewitnesses and surveillance footage.

### IV. STATEMENT OF PROBABLE CAUSE

12. Based on my training and experience, my participation in this investigation, my review of surveillance footage and law enforcement reports, and my conversations with law enforcement officers regarding this investigation, I know the following information:

    A.    **GARCIA Robbed Wells Fargo Bank**

13. According to surveillance video and Oxnard Police Department reports, on November 21, 2022, at approximately 10:00 a.m., a male walked up to a teller station in the Wells Fargo Bank branch in Oxnard, California. He pushed deposit envelopes to the teller and a note stating that this is an armed robbery and to give him all the money in $100 bills. The teller handed him approximately $9,000 in $100 denominations, which the bank later confirmed by inventorying its cash.

14. Multiple witnesses described the suspect as a Hispanic male, with a persistent cough, wearing a COVID-19 face mask, black shorts, and a beanie. Video surveillance from the bank is consistent with that description.

15. Video surveillance from businesses surrounding the bank showed the suspect leave the bank, get on a bicycle, and depart the area towards the Walmart Supercenter located at 2001 N. Rose Ave., Oxnard, California 93036, across the street from the bank.

16. Law enforcement later identified the suspect as GARCIA using surveillance footage and a six-pack identification by three eyewitnesses, as described below. I also reviewed a certification that at the time of the robbery, the deposits of Wells Fargo Bank were then insured by the Federal Deposit Insurance Corporation.

**B.   After GARCIA Robbed the Bank, GARCIA Biked to the Walmart Supercenter Nearby and Changed His Clothes**

17. According to witness statements made to police, a few minutes after the bank robbery, GARCIA parked his bicycle at the Walmart Supercenter across the street from the bank.[1]

18. Two Walmart Supercenter employees saw GARCIA at their store where he displayed the same persistent cough observed at the bank, changed his clothes, and left the store without paying for some items. The employees attempted to interact with GARCIA while he was at the store, noticed his unusual behavior, and later provided law enforcement descriptions of GARCIA that matched those from the bank and surveillance footage.

19. According to an Oxnard Police Department report, on the same day as the robbery, law enforcement presented a six pack of photos, including a photo of GARCIA, to two Walmart Supercenter employees. One employee positively identified GARCIA as the suspect. The other identified another individual in the six pack as the suspect.

---

[1] Before the bank robbery, GARCIA had purchased and put on a beanie and shirt from the same Walmart Supercenter that he was seen wearing during the bank robbery.

**C.     Police Arrested GARCIA for Violating a Protective Order, Seized the SUBJECT DEVICE, and Impounded the SUBJECT VEHICLE**

20.     According to an Oxnard Police Department report, at approximately 7:00 p.m. on November 21, 2022, several hours after the bank robbery, GARCIA was arrested for an unrelated violation.  Specifically, the Oxnard Police Department arrested GARCIA for violating the terms of a protective order that was issued to protect GARCIA's mother against GARCIA.  The protective order was issued on April 1, 2022, and expires on April 1, 2025, in the Superior Court for the State of California, County of Ventura, Case Number D404523.

21.     Family members had called 911 when they found GARCIA in his mother's residence.  GARCIA was booked into custody for violating California Penal Code § 273.6(a) (misdemeanor disobeying a domestic relations court order) and the terms of his parole.

22.     When GARCIA was arrested, and in accordance with his parole conditions, police took GARCIA into custody.  On GARCIA's person, police found and seized $759 and the SUBJECT DEVICE.

23.     Near where GARCIA was arrested, police impounded the SUBJECT VEHICLE for being illegally parked and blocking a private parking space on South Grant Street in Oxnard, California.  California Department of Motor Vehicle records show that GARCIA owns, operates, and has registered to himself that SUBJECT VEHICLE.

**D.  In the Two Days After the Robbery, the Victim Teller and Another Walmart Supercenter Employee Identified GARCIA in a Six Pack**

24.  According to an Oxnard Police Department report, on November 22, 2022, the day after the robbery, law enforcement presented a six pack of photos, including a photo of GARCIA, to another Walmart Supercenter employee, who positively identified GARCIA as the suspect.

25.  On November 23, 2022, two days after the robbery, law enforcement presented a six pack of photos, including a photo of GARCIA, to the victim teller from the Wells Fargo Bank branch in Oxnard, California, who positively identified GARCIA as the suspect.

**E.  GARCIA Is a Felon**

26.  Based on my review of GARCIA'S criminal history, I learned that GARCIA was convicted of the following felony crimes:

   a.  Second-degree burglary in violation of California Penal Code § 459 on or about January 12, 1998, in the Superior Court for the State of California, County of Ventura, Case Number CR43124;

   b.  Burglary in violation of California Penal Code § 459 on or about January 26, 1998, in the Superior Court for the State of California, County of Ventura, Case Number CR42945; and

   c.  Attempted robbery in violation of California Penal Code §§ 644, 211 and forgery (Prop 47) in violation of California Penal Code § 470(d) on or about July 9, 2021, in the

7

Superior Court for the State of California, County of Ventura, Case Number 2021005468.

## V. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

27. As used herein, the term "digital device" includes the SUBJECT DEVICE.

28. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

    a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

    b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not

8

kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

        c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

        d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

    29. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

        a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a

complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

        b.    Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

    30.    The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

        a.    Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

        b.    In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a

10

certain number of unsuccessful unlock attempts. Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

        c.    The person who is in possession of a device or has the device among his or her belongings is likely a user of the device. Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress GARCIA's thumb and/or fingers on the device(s); and (2) hold the device(s) in front of GARCIA's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

    31.  In addition to what has been described herein, the United States has attempted to obtain this data by requesting consent to search the SUBJECT DEVICE. The United States has not received consent to search the SUBJECT DEVICE.

//

//

11

## VI. CONCLUSION

32. For all the reasons described above, there is probable cause to believe that GARCIA has committed a violation of 18 U.S.C. § 2113(a): Bank Robbery. There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICE described in Attachment A-1 and the SUBJECT VEHICLE described in Attachment A-2.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __26th__ day of
January, 2023.

*[signature]*

HONORABLE LOUISE A. LAMOTHE
UNITED STATES MAGISTRATE JUDGE